**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| MOHAMED TOURE, | : |
| Petitioner, | : |
| vs. | :  CA 06-0520-WS-C |
| ALBERTO GONZALES, etc., et al.,[1] | : |
| | : |
| Respondents. | |

**REPORT AND RECOMMENDATION**

Mohamed Toure, a native and citizen of Gambia ordered removed from the United States, and presently being detained by the United States Immigration and Customs Enforcement ("ICE") arm of the Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[2] This matter has been referred to the undersigned for entry of

---

[1]   Bill Bateman is no longer the Warden of the Perry County Correctional Center and Robert Gaines is no longer the acting warden of that facility. Accordingly, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the new warden of the Perry County Correctional Center, David O. Streiff, is substituted for Bateman and Gaines as a proper respondent in this case.

[2]   While petitioner is no longer in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be **GRANTED**, on the basis that the removal of petitioner from the United States is not reasonably foreseeable, and that petitioner be granted his immediate supervised release from ICE under conditions to be enumerated by ICE.

## **FINDINGS OF FACT**

    1.    Toure is a native and citizen of Gambia who entered the United States on or about August 17, 1989 as a non-immigrant visitor. (Doc. 10, Exhibit C, at 2)

    2.    On July 28, 1997, Toure was arrested in Atlanta, Georgia for trafficking in cocaine and marijuana and possessing a knife during a crime; he was eventually convicted of at least one of the charges and sentenced to two (2) years probation. (*See id*.) On March 3, 1999, petitioner was convicted in a Georgia state court of violating that state's controlled substance act; he received a five-year split sentence which required him to spend two years in prison and serve the remaining three years on probation. (*See id.*) Based upon

---

confinement."), he was confined in the Perry County Correctional Center when he filed the instant action and, therefore, this Court retains jurisdiction to decide this matter, *see Patel v. United States Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("Habeas jurisdiction requires that the petitioner be in 'custody.' 'Custody' is determined as of the time of the filing of the petition.").

these convictions, removal proceedings were initiated against petitioner; a final administrative order of removal was entered on October 19, 2000. (*See id.*) On April 18, 2001, petitioner was removed from the United States to Gambia. (*Id.*)

    3.    Toure reentered the United States in May of 2002 (Doc. 10, Exhibit B) and, on July 15, 2005, was arrested in Fulton County, Georgia on a first-degree forgery charge (Doc. 10, Exhibit C, at 2). One week after this arrest, on July 22, 2005, Toure entered ICE custody "and was ordered removed by an authorized [i]mmigration officer by reinstating the prior removal order." (*Id.*)

    4.    The Post Order Custody Review Worksheet supplied to this Court by the federal respondents (Doc. 10, Exhibit C) lists the following attempts by ICE to obtain a travel document and status:

> 7/21/2005-TD request sent to the Embassy of Gambia
> 8/26/2005-TD inquiry to embassy via fax
> 9/26/2005-contacted Mr. Mendy at the embassy and stated a request was sent to the Government for authorization.
> 10/17/2005-TD inquiry to embassy via fax
> 10/28/2005-TD request sent to HQ/ICE/TDU for assistance with acquiring a TD with subject's embassy. TD inquiry to embassy via fax.
> 11/01/2005-message left at the embassy inquiring about TD status.

(*Id.* at 4)

    5.    On November 7, 2005, a decision was made by ICE to continue

Toure's detention. (Doc. 10, Exhibit B)

> This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview and consideration of any information you submitted to ICE's reviewing officials.
>
> You are a citizen and national of Gambia who was removed from the United States on 04/21/2001, due to your aggravated felony convictions. Your (sic) reentered the U.S. sometime in May of 2002, and have since been arrested for Reproduction of Recorded Material, and Forgery 1st Degree. You have several arrests and convictions to include: Control (sic) Substance Act, Trafficking in Cocaine/Marijuana/Illegal Drugs and Possession of [a] Knife during a crime, and Failure to Appear. Based on your previous actions, criminal activity and willful disregard of the immigration laws and regulations of the United States, you are considered to be a threat to the community and a flight risk. ICE is working toward obtaining a travel document with which to effect your removal, which is likely to occur in the reasonably foreseeable future.
>
> Based on the above, you are to remain in ICE custody pending your removal from the United States. You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

> If you have not been released or removed from the United States by 11/27/2005, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU), 801 I St. NW, Washington, DC 20536. HQPDU will make a final determination regarding your custody.

(*Id.*)

6.  On February 2, 2006, Toure filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the United States District Court for the Western District of Louisiana, Monroe Division. (Doc. 10, Exhibit A, Report and Recommendation, at 1) The Report and Recommendation entered in that case on May 8, 2006 reads, in relevant part, as follows:

> Despite several attempts, ICE has been unsuccessful in securing Toure's travel documents; however, most recently, on April 20, 2006, ICE learned that the Gambian Embassy was still attempting to verify Toure's identity and that an update would be available after May 1, 2006.
>
> . . .
>
> In this case, **while the presumptively reasonable six-month period has indeed expired**, **Toure has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future**. The lapse of the presumptive detention period, by itself, does not mandate release, *see Zadvydas*, 533 U.S. at 701, and the petitioner must still give good reason to believe that his removal is unlikely in the foreseeable future. Here, the Government has demonstrated that it is engaged in ongoing efforts to obtain Toure's travel documents from the Gambian government, and has provided credible evidence to support its belief that travel documents will be issued in the reasonably foreseeable future. **While ICE's**

5

> **previously unsuccessful attempts to obtain travel documents would normally militate toward release, Toure's wilful disregard for the law makes these unsuccessful attempts and the delays they cause tolerable, especially in light of ICE's most recent contact with the Gambian government**.

(*Id.* at 1-2 & 3 (emphasis supplied)) The District Court entered judgment on June 15, 2006 dismissing Toure's § 2241 petition without prejudice. (Doc. 10, Exhibit A)

      7.    On June 5, 2006, Toure penned a letter to the Gambian Embassy to inquire about the status of a travel document request made on his behalf by ICE. (Doc. 11, June 19, 2006 Attachment Entitled Travel Document)

> Please be informed that all necessary documents pertaining to your case had (sic) been submitted to the competent authorities in The Gambia for onward studies. Since the submission of your document[s] and that of other inmates awaiting removal, I have not received any instruction on your case. For that matter, I cannot issue you any travel document without a lawful authorization.

(*Id.*) This letter of June 19, 2006 from the Gambian Embassy in Washington, D.C. was signed by Njagga Mendy. (*Id.*)

      8.    Toure filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on September 1, 2006. (Doc. 1)

      9.    On November 13, 2006, John Seright, a Deportation Officer with the Detention and Removal Operations Division of ICE, executed a declaration

which was filed by the federal respondents in support of their response to Toure's habeas corpus petition. (Doc. 10, Exhibit D)

> 2. I have been in contact with the Embassy of Gambia in regard to the removal of Mohamed Toure. In July, 2006 my former contact, First Secretary for Consular Affairs Mr. Mendy, vacated his post.
>
> 3. Subsequently, I have been in contact with the new First Secretary for Consular Affairs, Mr. Taal. I have spoken to him in regard to Mohamed Toure on several occasions. Mr. Taal informed me that there was a delay with Mr. Toure's case due to recent changes of personnel in the consular section of the Gambian Embassy.
>
> 4. I spoke with Mr. Taal in regard to Mr. Toure on October 17, 2006. Mr. Taal informed me that all required documentation had been received by the Embassy of The Gambia and forwarded to its capital, Banjul, for verification and approval. Mr. Taal informed me that he would issue travel documents as soon as he receives approval from Banjul and that the United States should consider the request for travel documents as "pending approval".

(*Id.*)

10. The federal respondents have provided this Court with no further information, since November 14, 2006, to indicate that travel documents have been approved for Toure and/or that Toure has been repatriated to his native Gambia. In other words, four and one-half additional months have elapsed since the federal respondents answer that "the request for travel documents is progressing toward approval[]" with no indication that such approval is likely

to come in the reasonably foreseeable future.

## **CONCLUSIONS OF LAW**

1.  In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.  In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a) Detention, release, and removal of aliens ordered removed**

    **(1) Removal period**

        **(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period

of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the **latest** of the following:

**(i)** The date the order of removal becomes administratively final.

**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2) Detention**

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section

>   1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined

that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In this case, the federal respondents concede, as they must, that the presumptively reasonable six-month detention period has long since passed. (*See* Doc. 10, at 4 ("The Court of Appeals has held that *Zadvydas* does not set out a *per se* rule that mandates an alien's release after six months.")) In fact, as found by Magistrate Judge Karen L. Hayes in the Western District of Louisiana, as of the date of the entry of the report and recommendation--May 8, 2006--Toure's "presumptively reasonable six-month detention period ha[d] [] expired[.]" (Doc. 10, Exhibit A, REPORT AND RECOMMENDATION, at 3) Ten months have elapsed since the entry of Judge Hayes' report and recommendation with no production of travel documents for Toure and a mere November 13, 2006 representation from John Seright that "the United States should consider the request for travel documents as 'pending approval'." (Doc. 10, Exhibit D, Seright declar., at ¶ 4) Accordingly, Toure has been detained by ICE now for some twenty (20) months since being taken into custody on July 22, 2005 and ordered removed in accordance with the prior removal order.

5. In *Zadvydas, supra*, the Supreme Court indicated that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701, 121 S.Ct. at 2505; *see also id.* at 699-700, 121 S.Ct. at 2405 ("[T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

6. The undersigned concludes that Toure has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained by ICE awaiting removal for over 20 months--well in excess of the six-month presumptively reasonable period--with the only assurance he has received from the Gambian Embassy in Washington, D.C. being that it cannot issue him any

travel documents "without a lawful authorization." *See Seretse-Khama v. Ashcroft*, 215 F.Supp.2d 37, 48 (D. D.C. 2002) ("Based on this record of the continued detention of petitioner awaiting removal for well over three years (far in excess of the six-month presumptively reasonable period), with no success by the INS (and arguably little effort) in obtaining travel documents, the Court concludes that petitioner has met his burden of showing 'good reason to believe that there is no *significant likelihood* of removal in the reasonably foreseeable future.'")). For its part, ICE has not provided sufficient evidence to rebut Toure's showing. The November 13, 2006 declaration statement from John Seright that, according to Mr. Taal, the Gambian First Secretary for Consular Affairs, the United States' travel document request on petitioner was "'pending approval[]'" does nothing but underscore petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future particularly in light of the four and one-half months that have elapsed since that date with no production of travel documents. *See Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189 (W.D. Wash. 2006) ("Petitioner has now been detained for more than eight months since his order of removal became final on November 17, 2005. Given the time that has passed since the R & R without the production of travel documents, and given

that six weeks have passed since Respondents' last request for a 'few more weeks,' this Court now finds that the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future.").

      7.      It is clear to the undersigned not only that there is no significant likelihood of Toure's removal in the reasonably foreseeable future but, as well, that his continued detention does not meet the purposes of the statute. As recognized in *Zadvydas, supra*, the purposes of the statute are ensuring the alien's presence at the moment of removal and preventing danger to the community. *See* 533 U.S. at 690, 121 S.Ct. at 2499 (citation omitted). The respondents have parenthetically argued that "[p]etitioner's conviction for drug crimes and possession of a firearm or knife while committing those crimes, and his more recent forgery arrest, as well as his illegal re-entry to the United States after his prior removal, establish both a reason to doubt that he will voluntarily present himself for removal and a reason to believe that he presents a risk to the community of further criminal activity." (Doc. 10, at 4 n.6)

> But by definition the first justification-preventing flight-is weak or nonexistent where removal seems a remote possibility at best. As this Court said in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), where detention's goal is no longer practically attainable, detention no longer "bear[s] [a] reasonable relation to the purpose for which the individual [was]

>committed." *Id.*, at 738, 92 S.Ct., at 1845.
>
>The second justification-protecting the community-does not necessarily diminish in force over time. But we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. . . . In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.

533 U.S. at 690-691, 121 S.Ct. at 2499.

8. Given the risk-of-flight analysis by the Supreme Court in *Zadvydas*, the argument made by the federal respondents in this case is adequately countered by the undersigned's earlier determination that petitioner's removal from this country is not reasonably foreseeable.

9. Relevant to the respondents' argument that petitioner represents a danger to the community, the Supreme Court indicated in *Zadvydas* that "once the flight risk justification evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." 533 U.S. at 691-692, 121 S.Ct. at 2499 (citations omitted). While petitioner's convictions for trafficking in cocaine and marijuana and possessing a knife during the commission of these offenses may constitute a crime of violence, nothing in the record indicates that Toure's

15

mere possession of a knife while trafficking in cocaine and marijuana establishes that he is a specially dangerous person nor is there any attendant special circumstance, such as mental illness or a volitional impairment. Accordingly, the respondents' danger-to-the-community argument need be rejected.

      10.    In light of the foregoing, the undersigned recommends that this Court release petitioner from custody, subject to reasonable conditions ICE deems necessary to ensure Toure's appearance and return--including those set forth in 8 C.F.R. § 241.5(a)--pending the issuance of travel documents by the Gambian Embassy to effectuate his removal to his native country. *See Zadvydas, supra*, 533 U.S. at 700, 121 S.Ct. at 2504 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.").

## CONCLUSION

The Magistrate Judge recommends that this Court grant Mohamed Toure's habeas corpus petition filed pursuant to 28 U.S.C. § 2241 and order his immediate supervised release under conditions set forth by the ICE arm of

the Department of Homeland Security.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 29th day of March, 2007.

<div style="margin-left:2em">

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

</div>

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

<div style="text-align:right">
s/WILLIAM E. CASSADY<br>
UNITED STATES MAGISTRATE JUDGE
</div>